Filed 8/24/23  P. v. Lee CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Nevada)

----

| | |
|---|---|
| THE PEOPLE, | C096700 |
| Plaintiff and Respondent, | (Super. Ct. Nos. F20-000004, F21-000054) |
| v. | |
| DAWN THERESA LEE, | |
| Defendant and Appellant. | |

In separate criminal matters (case Nos. F20-000004 & F21-000054), defendant Dawn Theresa Lee pled guilty to one count of transportation or sale of a controlled substance and one count of possession of a controlled substance for sale (Health & Saf. Code, §§ 11378, 11379, subd. (a)); she also admitted an out-on-bail enhancement allegation that was attached to the latter count (Pen. Code, § 12022.1).[1]  In accordance

---

[1]  Undesignated statutory references are to the Penal Code.

1

with the plea agreements in the two cases, additional charges were dismissed and defendant was sentenced to a stipulated state prison term of six years eight months (including an upper term sentence of four years for violation of section 11379, subdivision (a)), execution of which was suspended and defendant was placed on formal probation for a period of two years, subject to various terms and conditions, including participation in the adult drug court program. Defendant's grant of probation was ultimately revoked following two admitted probation violations. The trial court executed the suspended stipulated term of imprisonment, ordering five years six months to be served in local confinement and the concluding 14 months to be served on mandatory supervision.

On appeal, defendant contends the matter must be remanded for a new sentencing hearing because: (1) the changes to section 1170 made by Senate Bill No. 567 (2021-2022 Reg. Sess.) (Senate Bill 567), limiting the trial court's ability to impose an upper term sentence, apply to her case notwithstanding the fact that the upper term sentence she challenges on appeal was part of a stipulated sentence; (2) the changes to section 1385 made by Senate Bill No. 81 (2021-2022 Reg. Sess.) (Senate Bill 81), requiring the trial court to consider and afford great weight to certain factors when deciding whether to strike an enhancement in the interest of justice, also apply to her case notwithstanding the stipulated sentence; and (3) the trial court abused its discretion and deprived her of a benefit of her plea bargain when it sentenced her to local confinement under section 1170, subdivision (h), rather than state prison, where she would be entitled to early parole eligibility as a nonviolent offender under Proposition 57, the Public Safety and Rehabilitation Act of 2016.

We affirm. As we explain, although the ameliorative changes to sections 1170 and 1385 made by Senate Bill 567 and Senate Bill 81, respectively, apply retroactively in this appeal, they do not apply to defendant's stipulated sentence. In so concluding, we agree with *People v. Mitchell* (2022) 83 Cal.App.5th 1051, review granted December 14,

2

2022, S277314, and disagree with *People v. Todd* (2023) 88 Cal.App.5th 373, review granted April 26, 2023, S279154 (*Todd*). We also conclude defendant has forfeited the contention that the trial court abused its discretion and deprived her of a benefit of her bargain when it sentenced her to a split sentence under section 1170, subdivision (h) because defendant consistently asked the trial court for such a sentence and never asked to be sentenced to state prison.

BACKGROUND

Due to the nature of the contentions raised in this appeal, we need not recite the facts underlying defendant's convictions or her violations of probation. The following summary of the procedural background will suffice.

In January 2020, the Nevada County District Attorney's Office charged defendant, in case No. F20-000004 (first case), with three narcotics-related offenses, including one count of transportation or sale of a controlled substance. Defendant was arraigned on these charges and was thereafter released from custody after posting a bail bond.

In February 2021, defendant was charged, in case No. F21-000054 (second case), with one count of possession of a controlled substance for sale. The complaint further alleged that defendant committed this offense while released from custody on bail/own recognizance in the first case.

In August 2021, defendant entered negotiated pleas in both cases. The plea agreement in the first case indicated that defendant would plead guilty to one count of transportation or sale of a controlled substance, the remaining counts would be dismissed, and defendant would be sentenced to a stipulated upper term sentence of four years in state prison, execution of which would be suspended and defendant would be provided with the opportunity to participate in the adult drug court program. The plea agreement in the second case indicated that defendant would plead guilty to possession of a controlled substance for sale, admit the out-on-bail enhancement, and would be sentenced to a stipulated sentence of two years eight months (eight months—one-third the middle

3

term—for that offense plus two years for the enhancement), execution of which would also be suspended so that defendant could participate in the adult drug court program. Defendant was specifically notified that if she "fail[ed] to satisfactorily complete drug court," both the four-year term in the first case and the two-year, eight-month term in the second case "will be imposed . . . for a total of [six years eight months]."

At the plea hearing, the trial court specifically advised defendant that she "would be sentenced to a total of six years eight months for both cases . . . execution of that sentence would be suspended and [she] would be admitted to the adult drug court subject to a grant of probation." Defendant stated she understood. The trial court further advised defendant: "Now, it would be the sincere hope of the Court as well as the parties that you successfully complete adult drug court. Do you understand, though, that if you did not successfully complete adult drug court that you would be sentenced to state prison for a sentence of six years and eight months?" Defendant answered, "Yes." After receiving additional required advisements and waiving her constitutional rights, defendant pled guilty and admitted the enhancement allegation as contemplated by the plea agreements.

As promised, the trial court sentenced defendant to the agreed upon state prison term of six years eight months, execution of which was suspended and defendant was placed on formal probation for a period of two years, subject to various terms and conditions, including participation in the adult drug court program.

In March 2022, the Nevada County probation department submitted a report in both of defendant's cases, informing the trial court that defendant committed two alleged probation violations. The following month, defendant admitted each violation. Based on the admissions, the trial court found defendant to be in violation of probation in both cases.

In July 2022, the trial court executed the suspended stipulated sentence of six years eight months, but ordered five years six months to be served in local confinement

4

with the concluding 14 months to be served on mandatory supervision. This appeal followed.

DISCUSSION

I

*Senate Bill 567*

Defendant contends the matter must be remanded for a new sentencing hearing because the changes to section 1170 made by Senate Bill 567 apply retroactively to her case notwithstanding the fact that the upper term sentence she challenges on appeal was part of a stipulated sentence. While we agree that the new law applies retroactively to this case, it does not benefit defendant because she was sentenced to a stipulated term of imprisonment.

Senate Bill 567, effective January 1, 2022, amended section 1170 to limit the trial court's ability to impose an upper term determinate sentence by making the middle term the presumptive prison term unless specified circumstances exist. (§ 1170, subd. (b)(1)-(2); Stats. 2021, ch. 731, § 1.3.) A trial court "may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (§ 1170, subd. (b)(2); Stats. 2021, ch. 731, § 1.3.)

As the People concede, this ameliorative change in the sentencing law applies retroactively to cases not yet final on appeal. (*People v. Zabelle* (2022) 80 Cal.App.5th 1098, 1109.) The People argue, however, that defendant does not benefit from the change because the upper term sentence she challenges on appeal was imposed as part of a stipulated sentence to which she agreed in order to have the opportunity to participate in the drug court program. We agree with the People on this point.

5

In *People v. Mitchell, supra*, 83 Cal.App.5th 1051, review granted, our colleagues at the First Appellate District held a defendant who agrees to a stipulated upper term sentence as part of a negotiated plea agreement is not entitled to relief under amended section 1170, subdivision (b). (*Mitchell,* at pp. 1057-1059.) This is because "amended section 1170, subdivision (b)(1) states that where an offense provides for a sentencing triad, the trial court 'shall, in its *sound discretion*, order imposition of a sentence not to exceed the middle term except as otherwise provided in paragraph (2).' (Italics added.) This language indicates that the statute was not intended to apply to sentences imposed pursuant to a stipulated plea agreement, as the trial court lacks discretion to select the sentence in the first place." (*Id*. at p. 1058.) There, as here, having approved the plea, the trial court had no discretion to "proceed as to the plea other than as specified in the plea." (§ 1192.5, subd. (b).) Thus, the trial court "had no opportunity to exercise any discretion in deciding whether the imposition of the upper, middle, or lower term would best serve 'the interests of justice' under former section 1170, subdivision (b)." (*Mitchell,* at p. 1058.) Moreover, as here, during the plea hearing, the trial court asked the defendant whether she understood the sentence to which she agreed had to be imposed when the matter reconvened for the sentencing hearing, without any argument for a lesser or greater sentence. The defendant said she understood. (*Ibid*.) Because the trial court did not "in its sound discretion, order imposition of a sentence . . . exceed[ing] the middle term" (§ 1170, subd. (b)(1)), but rather imposed the sentence to which the parties agreed, the limitations placed on that discretion found in subdivision (b)(2) of the amended section did not apply. (*Mitchell,* at p. 1058.)

Stated simply, limitations placed on an exercise of discretion cannot logically apply where no discretion was exercised in the first place. Such is the case here. As in *Mitchell*, defendant agreed to an upper term sentence as part of a stipulated sentence. While the trial court possessed discretion to reject the bargained-for disposition and withdraw its approval of the plea agreement, it had no discretion to " 'change that bargain

6

or agreement without the consent of both parties.' " (*People v. Segura* (2008) 44 Cal.4th 921, 931.) But the trial court did not disapprove of the agreement. In exchange for defendant's guilty pleas, admission to the out-on-bail enhancement, and agreement to a stipulated sentence including an upper term, additional counts were dismissed and execution of the stipulated sentence was suspended so that defendant could participate in the drug court program through a grant of probation. Before accepting defendant's pleas, the trial court expressed its hope that she successfully complete the program and asked whether she understood that failure to do so would result in execution of the stipulated sentence. Defendant said she understood. Having approved this agreement, the trial court possessed no discretion to impose a sentence other than the one to which the parties agreed. We agree with the *Mitchell* court that Senate Bill 567's amendments to section 1170, subdivision (b) do not apply in these circumstances. (See also *People v. Sallee* (2023) 88 Cal.App.5th 330, 337-338, review granted Apr. 26, 2023, S278690 ["the trial court did not exercise discretion with regard to the sentencing triad when it imposed the stipulated sentence set out in the negotiated plea agreement, and thus the amendments to section 1170 . . . are inapplicable under the plain language of the statute"].)

We are also persuaded by the reasoning in *People v. Brooks* (2020) 58 Cal.App.5th 1099, which concluded section 1170.91, requiring the trial court to consider trauma resulting from military service as a mitigating factor when imposing a sentence, did not apply to a stipulated sentence because the trial court " 'never had any occasion to employ' triad discretion [where] the defendant had agreed to a specific term of years in his plea bargain." (*People v. Sallee, supra*, 88 Cal.App.5th at p. 339, review granted; see also *People v. King* (2020) 52 Cal.App.5th 783, 793.)

Nevertheless, relying on *Todd, supra*, 88 Cal.App.5th 373, review granted, defendant argues the amendments to section 1170 made by Senate Bill 567 do apply notwithstanding the stipulated sentence. We acknowledge that *Todd* so held, disagreeing with *Mitchell*. The *Todd* court first distinguished *Brooks* as a case involving "additional

7

factors to be considered among many" in exercising sentencing discretion, whereas, amended section 1170, subdivision (b)(2) "prohibits the imposition of the upper-term sentence absent specific findings." (*Todd,* at p. 378.) This is true, but does not account for the qualifying language of subdivision (b)(1) of the section: "When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the court shall, *in its sound discretion*, order imposition of a sentence not to exceed the middle term, except as otherwise provided in paragraph (2)." (§ 1170, subd. (b)(1), italics added.) We agree with *Mitchell* that where the trial court is not exercising "its sound discretion" in choosing between the three possible terms, as here, where defendant stipulated to the upper term in exchange for specific benefits, the trial court may impose that upper term sentence without complying with section 1170, subdivision (b)(2). Thus, we disagree with the *Todd* court's statement that "the imposition of the aggravated term" in these circumstances "exceeds the court's authority unless the statutory prerequisites are met or waived because the aggravated term cannot be imposed absent the court's finding of those circumstances." (*Todd,* at p. 379.) This interpretation either reads section 1170, subdivision (b)(2) in isolation, or it reads "in its sound discretion" out of section 1170, subdivision (b)(1), neither of which is appropriate. (See *People v. Barasa* (2002) 103 Cal.App.4th 287, 291-292 [statutory provisions must be construed not in isolation but in the context of the entire statutory scheme, and an interpretation that renders related provisions nugatory must be avoided].)

The *Todd* court also relied on section 1016.8, subdivision (a)(1) of which states: "The California Supreme Court held in *Doe v. Harris* (2013) 57 Cal.4th 64 that, as a general rule, plea agreements are deemed to incorporate the reserve power of the state to amend the law or enact additional laws for the public good and in pursuance of public policy. That the parties enter into a plea agreement does not have the effect of insulating them from changes in the law that the Legislature has intended to apply to them." (Italics added.) The court reasoned that following *Mitchell* "would render [the defendant's] plea

8

bargain to a stipulated sentence the very waiver of 'unknown future benefits of legislative enactments' that the Legislature has deemed void as against public policy because his entry of plea on those terms was not 'knowing and intelligent.' " (*Todd, supra*, 88 Cal.App.5th at p. 380, review granted, quoting § 1016.8, subd. (a)(4).) Concluding that "the relevant question here is not whether the sentencing judge is bound by the parties' stipulated sentence, but whether [the defendant] is entitled to the ameliorative effect of [the] new sentencing provisions," the *Todd* court concluded *People v. Stamps* (2020) 9 Cal.5th 685 compelled retroactive application of amended section 1170, subdivision (b) despite the stipulated sentence and remanded the matter to the trial court to allow the defendant to either waive or invoke these new requirements. (*Todd,* at pp. 380-381; see also *People v. Fox* (2023) 90 Cal.App.5th 826, 831-832.)

We do not dispute that Senate Bill 567's changes to section 1170, subdivision (b) apply retroactively to defendant's case. The People concede as much. In our estimation, however, the relevant question is whether the additional requirements of section 1170, subdivision (b)(2), read together with subdivision (b)(1), apply to a stipulated sentence. For the reasons already expressed, we conclude they do not.

We finally note that in *People v. Kelly* (2022) 87 Cal.App.5th 1, review granted March 22, 2023, S278503, in which our colleagues at the Second Appellate District held the new requirements of section 1170, subdivision (b)(6) do not apply to a stipulated sentence, the court observed: "There is a good reason for our holding today. Years ago, our Supreme Court held that a defendant may not retain the favorable aspects of a plea bargain and jettison its unfavorable aspects. [Citations.] As cogently stated in *People v. Couch* (1996) 48 Cal.App.4th 1053, 1056-1057: ' "Where defendants have pleaded guilty in return for a *specified sentence*, appellate courts are not inclined to find error even though the trial court acts in excess of jurisdiction in reaching that figure, as long as the court does not lack *fundamental jurisdiction*. . . . The rationale behind this policy is that defendants who have received the benefit of their bargain should not be allowed to

9

'trifle with the courts' by attempting to better the bargain through the appellate process." ' " (*Kelly,* at p. 8.)

Defendant has already received a tremendous benefit from her bargain. Execution of the stipulated sentence was initially suspended and defendant was granted probation so she could participate in the drug court program. Defendant participated in that program for six months. The stipulated sentence was executed only after she was unsuccessful in completing that program. Thus, notwithstanding the upper term of four years, defendant's plea deal was very favorable to her, and only became unfavorable once she violated the terms of her grant of probation. She was clearly informed that failure to complete the program would result in execution of the stipulated sentence. These facts distinguish this case from *Todd*, and *Stamps*, where the parties could be returned to the status quo if the trial court decided to withdraw its approval of the plea agreement. Here, even if the trial court withdrew its approval of the plea agreement, the parties would not be returned to the status quo because defendant already received the main benefit of her bargain—the grant of probation. For this reason, even if we were otherwise inclined to agree with the *Todd* court's reasoning, we do not believe the Legislature would have intended Senate Bill 567 to apply in these circumstances.

In sum, we agree with the analysis in *Mitchell*. Because the trial court did not exercise any discretion in selecting a lower, middle, or upper term when it imposed the stipulated sentence set out in the negotiated plea agreement, the amendments to section 1170, subdivision (b) made by Senate Bill 567 do not apply.

II

*Senate Bill 81*

Defendant also claims the changes to section 1385 made by Senate Bill 81 apply retroactively to her case notwithstanding the stipulated sentence. We again agree on the question of retroactivity, but disagree that the changes apply to defendant's stipulated sentence.

10

Senate Bill 81, effective January 1, 2022, "amended section 1385 to specify factors that the trial court must consider when deciding whether to strike enhancements from a defendant's sentence in the interest of justice." (*People v. Sek* (2022) 74 Cal.App.5th 657, 674; Stats. 2021, ch. 721, § 1.) As relevant here, subdivision (c)(1) of the amended statute provides: "Notwithstanding any other law, the court shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute." (§ 1385, subd. (c)(1).) Subdivision (c)(2) then provides, in relevant part: "In *exercising its discretion* under this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in subparagraphs (A) to (I) are present. Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety." (§ 1385, subd. (c)(2), italics added.)

Defendant asserts the following three enumerated circumstances apply to her, and therefore the trial court abused its discretion in failing to consider and afford great weight to them in deciding whether to strike her out-on-bail enhancement: "(D) The current offense is connected to mental illness. [¶] (E) The current offense is connected to prior victimization or childhood trauma. [¶] (F) The current offense is not a violent felony as defined in subdivision (c) of Section 667.5." (§ 1385, subd. (c)(2)(D)-(F).) However, as we have already explained in considerable detail, the trial court did not exercise any discretion in imposing the stipulated sentence. For this reason, we also conclude the amendments to section 1385 made by Senate Bill 81 do not apply. (Cf. *People v. Brooks, supra*, 58 Cal.App.5th at pp. 1106-1107; *People v. King, supra*, 52 Cal.App.5th at p. 793.)

# III

## *Proposition 57*

Finally, defendant asserts the trial court abused its discretion and deprived her of a benefit of her bargain when it sentenced her to local confinement rather than state prison, where she would be eligible for early release on parole as a nonviolent offender under Proposition 57. The contention is forfeited.

### A. *Additional Background*

The plea forms in this case have the box for "State Prison" checked. As mentioned, after accepting defendant's guilty pleas, the trial court sentenced her to a "state prison" term of six years eight months, execution of which was suspended while defendant attempted to complete the drug court program.

After defendant admitted violating her grant of probation, she submitted a sentencing brief arguing that the trial court should strike the out-on-bail enhancement under section 1385, as amended by Senate Bill 81, and impose a split sentence under section 1170, subdivision (h), to be served in local confinement with a concluding portion to be served on mandatory supervision. She thereafter filed a revised sentencing brief, adding the assertion that the trial court should impose a lower or middle term sentence under section 1170, subdivision (b), as amended by Senate Bill 567. However, she continued to ask for a split sentence under section 1170, subdivision (h). During defendant's interview with the probation officer, she also "expressed a desire to receive a split sentence" because "[s]he felt it would be beneficial to her reintegration into the community, by assisting her with connection to local resources upon her release from custody."

It was not until the People filed their response to defendant's revised sentencing brief, arguing that the trial court should impose and execute the stipulated term of six years eight months, the full term to be served in local confinement without mandatory supervision, that defendant made the following argument in her reply brief, under the

12

heading "Other equity issues": "Had Ms. Lee indeed incurred a state prison sentence, a sentence she apparently bargained for under [the attorney who represented her during the plea negotiation], her sentence would be subject to [Proposition] 57 because her charges are non-violent. This means she would be eligible for parole after serving the sentence for her primary offense: *sans* enhancement and subordinate term. She would also potentially receive the benefit of CDCR credits. If the district attorney is holding to the claim that the parties should receive the benefit of their bargain, Ms. Lee has a claim at least equal to the district attorney for enforcement of a bargained-for time of incarceration. Ms. Lee entered her plea bargain after passage of [Proposition] 57 and could reasonably expect its effects would apply to her." However, defendant did not ask to be sent to state prison to serve her time. Instead, she asked for the same disposition she requested in her revised sentencing brief, i.e., to be resentenced to a lower term of imprisonment under Senate Bill 567 and Senate Bill 81 and serve that time in local confinement with a concluding period of mandatory supervision. Defendant's reply brief concluded: "However, should the court deny one or more of those requests, the defense submits that Ms. Lee's sentence should, at greatest, be the equivalent of the sentence she bargained for, taking into account the application of [Proposition] 57 to her sentence."

At the sentencing hearing, defendant's attorney made the same argument, and again did not ask the trial court to send defendant to prison, where Proposition 57 would apply. Instead, counsel asked the trial court to impose a split sentence "consistent with [Proposition] 57" and "convert whatever—whatever above and beyond the base term to [mandatory] supervision."

The trial court found the argument to be "novel and interesting," but concluded the check on the plea forms next to the state prison box was "erroneous," it was "speculation as to what would or wouldn't happen" with respect to defendant receiving early parole under Proposition 57 if she was sent to prison, and therefore, defendant's argument did not change the court's decision to reimpose and execute the stipulated term of

13

imprisonment, ordering five years six months to be served in local confinement and the concluding 14 months to be served on mandatory supervision.

B.    *Analysis*

"[T]he Criminal Justice Realignment Act of 2011 addressing public safety . . . significantly change[d] the punishment for some felony convictions.  Under the terms of the Act, low-level felony offenders who have neither current nor prior convictions for serious or violent offenses, who are not required to register as sex offenders, and who are not subject to an enhancement for multiple felonies involving fraud or embezzlement, no longer serve their sentences in state prison.  Instead, such offenders serve their sentences either entirely in county jail or partly in county jail and partly under the mandatory supervision of the county probation officer."  (*People v. Scott* (2014) 58 Cal.4th 1415, 1418-1419; § 1170, subd. (h).)  Setting aside the checked boxes indicating defendant was agreeing to be sentenced to state prison, she was entitled to be sentenced to a split sentence, partly in local confinement and partly on mandatory supervision, under this enactment.  Defendant does not argue otherwise on appeal.  Indeed, this is precisely what she asked the trial court to do, multiple times.

Proposition 57 does not apply to offenders sentenced to local confinement.  That initiative "amended the California Constitution to provide, in relevant part, that '[a]ny person convicted of a nonviolent felony offense *and sentenced to state prison* shall be eligible for parole consideration after completing the full term for his or her primary offense.' "  (*In re Gadlin* (2020) 10 Cal.5th 915, 919, italics added, quoting Cal. Const., art. I, § 32, subd. (a)(1).)  To be sure, this provision would have applied to defendant had she been sentenced to state prison.  But she was not sentenced to state prison.  And at no point did she ask the trial court to sentence her to state prison.  Instead, as described more fully above, she asked the trial court, as an equitable matter, to impose a split sentence under section 1170, subdivision (h) that was "consistent with" what she would be entitled to receive if she were sentenced to state prison.  Specifically, because Proposition 57

14

would entitle her to parole eligibility after she completed the full term for her primary offense, defendant asked the trial court to craft a similar split sentence under section 1170, subdivision (h) and "convert whatever—whatever above and beyond the base term to [mandatory] supervision."

Now, for the first time on appeal, defendant asserts the trial court abused its discretion by failing to sentence her to state prison because those boxes were checked on the plea forms and the trial court had no basis to conclude they were checked erroneously rather than to enable her to benefit from early parole consideration under Proposition 57. The argument is forfeited because, again, defendant never asked the trial court to sentence her to a state prison term. "A party on appeal cannot successfully complain because the trial court failed to do something which it was not asked to do . . . ." (*In re Cheryl E.* (1984) 161 Cal.App.3d 587, 603; see also *People v. Lilienthal* (1978) 22 Cal.3d 891, 896.)

In any event, the assertion that defendant bargained for a state prison term is belied by the record and defies reason. She bargained for an opportunity to participate in the drug court program through a grant of probation, which she received. When she failed to successfully complete that program, she repeatedly asked to be sentenced to local confinement under section 1170, subdivision (h). Had a state prison sentence been a material part of defendant's bargain, one would think she would have asked the trial court to impose such a sentence. She did not. Instead, she asked for the benefit of Proposition 57 without having to serve her sentence in prison. Not only does this fail to preserve her appellate claim that the trial court should have sentenced her to prison, but it also confirms that serving time in prison was not something she desired as a part of her plea bargain.

# DISPOSITION

The judgment is affirmed.

                                                /s/
                                        BOULWARE EURIE, J.

I concur:

    /s/
KRAUSE, Acting P. J.

I concur; as to parts I and II, I concur in the result:

    /s/
MESIWALA, J.

16